UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                  :

**JUAN RIQUIAC MEJIA,**
                                :

                      Plaintiff,    :

                                :    **MEMORANDUM DECISION AND**

           – against –        :    **ORDER**

                                :    21-CV-6664 (AMD) (CLP)

**KE LAI XIANG NUMBER ONE**
**RESTAURANT INC., LIN LIU, AND LI PING**  :
**CHEN,**

                   Defendants.    :

                                :

---------------------------------------------------------------- X

**ANN M. DONNELLY,** United States District Judge:

      The plaintiff brought this action against his employer, alleging violations of the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*, and New York Labor Law ("NYLL"),

§§ 190, 650 *et seq.*, and related regulations, 12 N.Y.C.R.R. §§ 142-2.1 to 142-2.2. (ECF No.

27.) The Court held a one-day bench trial on July 10, 2024, at which the plaintiff testified. The

parties submitted post-trial briefing. (ECF Nos. 55, 56.) After carefully considering the

evidence introduced at trial, the arguments of counsel and the controlling law on the issues

presented, the Court makes the following findings of facts and conclusions of law, as required by

Rule 52(a) of the Federal Rules of Civil Procedure.

## LEGAL STANDARD

     "In an action tried on the facts without a jury . . . , the court must find the facts specially

and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). "The findings and

conclusions . . . may appear in an opinion or a memorandum of decision filed by the court." *Id.*

In a civil action for damages, the plaintiff bears the burden of proving each element of his claims

by the preponderance of the evidence. *See, e.g.*, *Wang v. XBB, Inc.*, No. 18-CV-7341, 2022 WL

912592, at *3 (E.D.N.Y. Mar. 29, 2022) (quoting *Hassoun v. Searls*, 968 F.3d 190, 202 (2d Cir. 2020)).

## FINDINGS OF FACT[1]

### I.    The Defendants

The defendant corporation Ke Lai Xiang Number One Restaurant Inc. does business as Ke Lai Qin Live Fish in the food court of the New World Mall in Flushing, Queens.  (ECF No. 50 at 6.)  Defendant Li Ping Chen owned the restaurant, and defendant Lin Liu — Chen's then-husband — was the chef and operated, supervised, and managed the restaurant.  (Chen Tr. 10:16-25; 10:16–11:24; Trial Tr. 12:4-5, 16–17, 14:1-2, 8–11, 30:11-24.)  Although she is named as a defendant in the amended complaint, Chen chose not to defend herself and has not appeared in this case.[2]

### II.    The Evidence at Trial

The plaintiff was the only witness at the trial.  On June 15, 2021, Liu hired the plaintiff to work in the restaurant's kitchen.  (Trial Tr. 11:8-9, 12:4-8; Defendants' Responses to

---

[1] The findings of fact are based on the trial testimony the admissible portions of the defendants' deposition transcripts and its evaluation of the plaintiff's credibility.  Citations to "Trial Tr." are to the bench trial transcript, citations to "Pl. Ex." are to exhibits the plaintiff introduced during the trial, and citations to "Chen Tr." and "Liu Tr." are to the defendants' deposition transcripts, respectively.  The plaintiff designated only certain portions of the defendants' depositions in the joint pretrial order, and the Court incorporated those designated portions into the trial record.  (Trial Tr. at 60:9–13.)  *See also* Fed. R. Civ. Pro. 32(a).  However, in his proposed findings of fact, the plaintiff cites portions of the deposition transcripts not designated in the joint pretrial order.  Because of the Court's unique role as the factfinder in this setting, the Court construes these citations as a motion to supplement the record.  And because the defendants have not had an opportunity to respond, the Court admits all admissible portions of the deposition transcripts into the trial record.  *See, e.g.*, Fed. R. Civ. Pro. 32(a)(6) ("If a party offers in evidence only part of a deposition . . . any party may itself introduce any other parts.").  The Court has also considered the parties' proposed findings of fact, and the facts to which the parties stipulated in the joint pretrial order.  (ECF Nos. 50, 55, 56.)

[2] At the plaintiff's request, the Clerk of Court issued a certificate of default against defendant Chen.  (ECF No. 36.)  The plaintiff moved for a default judgment (ECF No. 39), and the Court referred that motion to Magistrate Judge Cheryl L. Pollak (*ECF Order dated Dec. 14, 2024*).  Judge Pollak issued a Report and Recommendation, recommending that the Court deny the plaintiff's motion without prejudice and with

Interrogatories ¶¶ 4, 6, 7.)  The plaintiff helped Liu prepare food by, for example, chopping meat and vegetables and cooking rice, and took instruction from Liu in the kitchen.  (Trial Tr. 11:10-23.)  He also washed containers, cleaned the kitchen and swept and mopped the floors. (*Id.* 12:2-4.)  Toward the end of October 2021, Liu told the plaintiff that he needed him to work his new restaurant — Yu Huo — two blocks from Ke Lai Xiang.  (*Id.* 16:7-18, 17:2-20, 18:6-12.)  These new responsibilities were in addition to his job at Ke Lai Xiang and required the plaintiff to report to work earlier and to stay later than he had previously.  (*Id.* 17:2-18, 22:23–23:4.)  At Yu Huo, the plaintiff took out the trash, put together the tables and chairs, and unloaded deliveries. (*Id.* 17:24–18:5.)  On November 15, 2021 — just a few weeks after the plaintiff began working at Yu Huo — Liu fired him.  (*Id.* 18:15-21.)

Liu's deposition testimony, portions of which the plaintiff admitted at trial, was not credible in many respects.  For example, in testimony contradicted by the plaintiff and Chen, Liu claimed that he did not have the authority to hire and fire employees, that he did not pay the plaintiff directly, and that he was not responsible for the plaintiff's employment.  (Liu Tr.. 24:22–25:20.)  He also stated that he did not fire the plaintiff, but acknowledged that the plaintiff stopped working at the restaurant immediately after they argued about an instruction Liu gave the plaintiff.  (*Id.* 39:3-14.)  Liu's testimony on his ownership interest in Ke Lai Xiang and Yu Huo was muddled and contradictory.  At first, he denied any ownership interest in either restaurant, and claimed that he got the chef jobs through an employment agency and a job listing website; he ultimately conceded that his then-wife owned Ke Lai Xiang and he owned Yu Huo. (*Id.* 54.)

---

leave to renew once the plaintiff's claims against the other defendants were resolved; none of the parties filed objections and the Court adopted Judge Pollak's R&R.  (ECF Nos. 51–52.)

After carefully considering the record, I credit the plaintiff's testimony about the circumstances of his hiring, employment, and termination.

## III.    Income from the Restaurant

The parties did not submit any documentation of the restaurant's sales, and the restaurant did not retain any records reflecting its gross sales for 2021.  (ECF No. 50 at 6.)  Instead, at trial, the plaintiff tried to estimate the restaurant's gross sales by testifying about the average number of dishes the restaurant sold during a given week.

The plaintiff introduced the restaurant menu from the time he worked there, which shows that dishes cost between $8 and $35.  (Pl. Ex. 2; Trial Tr. 34:2-8; 50:22-25, 51:6-23.)[3]  The plaintiff estimated that during the busy periods, from 10:00 a.m. to 2:00 p.m. and 5:00 p.m. to 8:30 p.m. on Fridays through Sundays, the restaurant sold eight-to-ten dishes an hour.  (Trial Tr. 35:4-22.)  He based this estimate on "what [he] was seeing in the kitchen" and because he "fe[lt] that there's much more pressure on [him] to prepare dishes" during busy times.  (*Id.* 35:23–36:2.)  From 2:00 p.m. to 5:00 p.m. Friday to Sunday, the restaurant was slow and sold from two to five dishes an hour.  (*Id.* 36:23-10.)

The restaurant was busy Mondays through Thursdays from 10:00 a.m. to 2:00 p.m., when it sold eight to ten dishes an hour (*id.* 37:11–38:04), and from 7:00 p.m. to 8:30 p.m., when it sold six dishes an hour (*id.* 38:13-19).  The plaintiff estimates that the restaurant sold 40 dishes during each busy period on each of those four days.  (*Id.* 38:20–38:23.)  From 2:00 p.m. to 7:00 p.m., the restaurant sold ten to 20 dishes total on each of the same four days.  (*Id.* 39:9-12.)

At her deposition, Chen estimated that the restaurant's gross sales were "several hundred dollars" or "around" $500 a day.  (Chen Tr. 33:23–34:8.)  Liu did not testify about the

---

[3] One item on the menu, a combination platter that included three separate dishes, cost $70.  (Trial Tr. 50:14-21.)

restaurant's income.

While the plaintiff offered good faith estimates of the restaurant's income, his estimates lacked precision and consistency. For instance, he did not claim to see any records or billing of the precise number of orders. Accordingly, I find that there is no reliable evidence in the trial record on the restaurant's gross income.

## IV. Plaintiff's Hours and Wages

The defendants did not keep records of employees' work schedules. (Chen Tr. 19:11-14, 19–23; ECF No. 50 at 7). The plaintiff, however, maintained a contemporaneous, handwritten log of the hours that he worked in a notebook, which he updated every evening. (Trial Tr. at 20:22–21:02.)

The plaintiff testified that from June 15, 2021 to October 26, 2021 he typically worked from 10:00 a.m. to 9:30 p.m. Monday through Saturday, and from 10:00 a.m. to 10:00 p.m. on Sundays. (*Id.* 13:23-25, 14:8-24, 15:1-19; Pl. Ex. 1.) During this time, his pay was $120 a day. (*Id.* 28:17-22.) He had eight days off over this five-month period. (Pl. Ex. 1.) On October 27, 2021, Liu told the plaintiff that he would also have to work at Yu Huo; he started work between 8:00 a.m. and 10:00 a.m. and ended between 11:15 p.m. and 12:00 a.m. (Trial Tr. 16:7-18.) At that time, his daily pay increased to $125 a day. (*Id.* 29:10-15, 30:2-4.) Throughout his employment, the plaintiff was given a 15 to 20 minute lunch break each day. (*Id.* 15:20–16:1; Pl. Ex. 1.)

Because the plaintiff was paid a daily wage, he did not receive overtime wages. (Trial Tr. 30:5-7.) And there is no evidence in the record that he received spread-of-hours pay; indeed, Chen testified that she had never heard of the term. (Chen Tr. 22:19-21.)

According to the defendants, the plaintiff "worked approximately sixty hours per week" at $950 a week. (Defendants' Responses to Interrogatories ¶ 7.)

The Court credits the plaintiff's contemporaneous log of the days and hours that he worked, as it is consistent with his testimony.  The Court find that the plaintiff's log is the best evidence of the hours and days he worked.

## V.    The Defendants' Notice and Payment Practices

The defendants did not give the plaintiff written notice of how they calculated their wages.  (Trial Tr. 12:09-12; Chen Tr. 16:14-24; *see also* ECF No. 50 at 6.)  Nor did the plaintiff receive consistent wage statements.

**CONLUSIONS OF LAW**

The plaintiff claims that he is entitled to minimum wage and overtime wages under the FLSA and NYLL, spread of hours pay under the NYLL and statutory damages under the NYLL for the defendants' failure to provide a time of hire notice and wage statements.  The plaintiff also seeks to recover attorney's fees and costs.  For the reasons that follow, I find that the plaintiffs have proved by a preponderance of the evidence that the defendants violated the minimum wage, overtime, spread of hours and wage statement provisions of the NYLL, but that they have not proved their other claims.

## I.    FLSA Claims

The statutory minimum wage and overtime provisions of the FLSA apply to an employee who "1) is engaged in commerce or in the production of goods for commerce, or 2) is employed in an enterprise engaged in commerce or in the production of goods for commerce."  *Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 96–97 (2d Cir. 2009) (quoting 29 U.S.C. § 207(a)(1)) (internal quotation marks omitted); *see also* 29 U.S.C. § 206.  Because the plaintiff does not argue that he personally engaged in interstate commerce, he has an FLSA claim only if his employer is a covered enterprise.

The FLSA defines an "[e]nterprise engaged in commerce or in the production of goods for commerce" as an enterprise that: "(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)." 29 U.S.C. § 203(s)(1)(A). "The question of whether a defendant qualifies as an enterprise under the FLSA is not a jurisdictional issue, but an element that a plaintiff must establish in order to prove liability." *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 654 (E.D.N.Y. 2020) (alteration adopted) (internal quotation omitted).

The plaintiff has established that he "handl[ed] . . . or otherwise work[ed] on goods or materials that have been moved in or produced for commerce," satisfying the first requirement of enterprise coverage. 29 U.S.C. § 203(s)(1)(A). "[T]he Court reasonably infers from the nature of [the defendant's] business as a restaurant located in New York City that [the plaintiff] handled goods, such as food and other supplies, that originated outside of New York and regularly traveled through interstate commerce." *Feng v. Kelai Corp.*, 727 F. Supp. 3d 423, 444 (S.D.N.Y. 2024). Moreover, courts have consistently held that "it is logical to conclude that janitorial/cleaning supplies have moved in interstate commerce." *Chang Mei Lin v. Yeh's Bakery, Inc.*, No. 12-CV-2146, 2013 WL 867436, at *4 (E.D.N.Y. Mar. 7, 2013); *see also id.* (collecting cases).

However, the plaintiff has not proved that Ke Lai Xiang's annual gross sales exceeded $500,000. Although the Court credits the plaintiff's good faith estimates of the restaurant's income, that is all this testimony is, and it is insufficient to carry his burden for several reasons.

The plaintiff maintains that his estimate establishes that the restaurant's gross sales were approximately $586,950.  The plaintiff arrives at this number in this way:  he begins with the average number of orders during the busy times on the busy days of the week (65), the slow times on the busy days (10), the online orders on the busy days (12), the busy times on the slow days (39), the slow times on the slow days (15), and the online orders on the slow days (12).  He then multiplies these estimated total weekly orders by $21.50 — which he describes as "a midpoint figure of . . . the average price of a customer's order" (ECF No. 56 at 9) — for weekly sales of $11,287.50.  The plaintiff multiplies these estimated gross sales by the number of weeks in the year for the proposed gross sale numbers.

But there are a few problems with this analysis.  First, because of his many job responsibilities, the plaintiff had relatively little insight into the true number of orders.  For instance, he testified that he prepared the proteins for the whole day rather than for each order individually.  (Trial Tr. 36:3-8.)  The tickets also came into the chef, and the plaintiff did not look at them or read them.  (Trial Tr. 36:15-22.)  Nor did the plaintiff have access to the device that kept track of the online orders.  (Trial Tr. 40:6-11.)  Thus, the plaintiff's estimate of the number of customer orders a week is speculative and unreliable.  *Cf. Wang*, 2022 WL 912592, at *7 (accepting employees' estimate of gross annual sales, in part, because "she was responsible for managing and processing customers' transactions"); *Junmin Shen v. No. One Fresco Tortillas, Inc.*, No. 16-CV-2015, 2018 WL 6712771, at *7 (S.D.N.Y. Nov. 26, 2018) (concluding that an enterprise was covered under the FLSA based on the plaintiffs' estimate of the number of deliveries they made a day and the defendant's estimate of the average price of each delivery).

Second, the plaintiff worked at the restaurant for only six months.  While that may be enough time to get a sense of the daily or weekly order patterns, the plaintiff had a blinkered

perspective on the annual sales.  Just as there were busy hours and slow hours and busy days and slow days, there may well have been busy seasons and slow seasons.  And the plaintiff might have been employed for the six-month period during which the restaurant's sales were best each year.  There is simply not enough information in the record to conclude one way or the other.

Third, there is no reliable statistical basis for the "average price" that the plaintiff used to estimate the gross annual sales.  Because the plaintiff has no personal knowledge of the average price per order, he relied on the prices on a menu from the time of his employment to support his estimate.  (Pl. Ex. 2.)  But the number he lands on — $21.50 — is simply the average between the highest and lowest priced menu items.  (ECF No. 56 at 9.)  This is not a reliable estimate of the order price.  Indeed, there are more menu items that cost less than $21.50 than there are menu items that cost more than that.  (Pl. Ex. 2.)  Moreover, even crediting the plaintiff's estimates, the gross annual sales are just slightly more than $500,000, and if the average price per order were $18.31 or less — which the Court finds is at least an equally likely possibility — the gross annual sales would be less than $500,000.[4]

For these reasons, the plaintiff has not established by a preponderance of the evidence that Ke Lai Xiang had gross annual sales of $500,000 or more.  Accordingly, he cannot maintain a claim under the FLSA.

---

[4] The defendants cite 2020 tax returns that they represent shows gross income substantially below $500,000.  (ECF No. 55 at 2–3.)  However, these tax returns were not introduced at trial and are not in the record.  Therefore, the Court does not consider them in its analysis.

## II.    Supplemental Jurisdiction

Because the Court dismisses the FLSA claim, there are no remaining federal claims over which the Court has original jurisdiction in this case.  The defendants argue that the Court should therefore decline to exercise supplemental jurisdiction over the plaintiff's state law claims under 28 U.S.C. § 1367(c).

Section 1367 requires that "once it is determined that a supplemental claim is related to the claim within the court's original jurisdiction such that they form the same case or controversy, supplemental jurisdiction over the related claim is mandatory."  *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 447 (2d Cir. 1998).  And, as here, "where section 1367(a) is satisfied, 'the discretion to decline supplemental jurisdiction is available *only if* founded upon an enumerated category of subsection 1367(c).'"  *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 246 (2d Cir. 2011) (emphasis in original) (quoting *Itar-Tass Russian News Agency*, 140 F.3d at 448).  Furthermore, section 1367(c) provides that "a district court 'may' decline to exercise such jurisdiction," which means that section 1367(c) "is permissive rather than mandatory."  *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018) (quoting *Valencia v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003)).

The defendants cite subsection 1367(c)(3), which permits — but does not require — the Court to decline to exercise supplemental jurisdiction where, as here, "the district court has dismissed all claims over which it has original jurisdiction."

The Court exercises supplemental jurisdiction over the plaintiff's NYLL claims because declining to do so "would not promote the values articulated in [*United Mine Workers of America v.*] *Gibbs*[, 383 U.S. 715 (1966)]: economy, convenience, fairness, and comity."  *Catzin*, 899 F.3d at 85 (quoting *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004)).  Indeed, declining jurisdiction would have the opposite effect.  This case has been pending in this

Court for over four years.  The plaintiff's testimony at the bench trial is relevant to his federal and state law claims, the parties filed post-trial briefs on both sets of claims, and this case includes "no issues of special state court expertise nor any novel questions of state law or state-law causes of action that would be better decided in state court."  *Catzin*, 899 F.3d at 86; *see also id.* (holding that the district court abused its discretion by declining to exercise supplemental jurisdiction over NYLL claims after finding that the plaintiffs had abandoned their FLSA claims one week before a scheduled trial).

Accordingly, the Court next considers the defendants' liability under the NYLL.

## III.    NYLL Claims

"New York's Labor Law is the state analogue to the federal FLSA," but it "does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of annual sales."  *Valdez v. H & S Rest. Operations, Inc.*, No. 14-CV-4701, 2016 WL 3079028, at *3 (E.D.N.Y. Mar. 29, 2016) (citations and quotation marks omitted), *report and recommendation adopted*, 2016 WL 3087053 (E.D.N.Y. May 27, 2016).  Therefore, the plaintiff's claims under the NYLL do not suffer the same infirmities as his claims under the FLSA.

### a.    The Employment Relationship and Joint and Several Liability

The NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors. *Mahoney v. Amekk Corp.*, No. 14-CV-4131, 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016), *report and recommendation adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016); *see also id.* (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status).  Although the FLSA does not conclusively define the term "employer," it describes an employer as "any person acting directly or indirectly in the interest of

an employer in relation to an employee." 29 U.S.C. § 203(d); *see* NYLL § 190(3) (defining

"employer" as "any person . . . employing any individual in any occupation"). "[E]mployment

for FLSA [and NYLL] purposes [is] a flexible concept to be determined on a case-by-case basis

by review of the totality of the circumstances." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d

Cir. 2013) (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008)).

Indeed, "[a]n individual may simultaneously have multiple 'employers' for the purposes of the

FLSA [and NYLL], in which case, all joint employers are responsible, both individually and

jointly, for compliance with all applicable provisions of the [statutes]." *Draskovic v. Oneota

Assocs., LLC*, No. 17-CV-5085, 2019 WL 783033, at *5 (E.D.N.Y. Feb. 21, 2019) (citation

omitted).

For NYLL purposes, "[t]he underlying inquiry in determining 'employer' status is

whether the individual possessed operational control over employees . . . ." *Tapia v. BLCH 3rd

Ave. LLC*, 906 F.3d 58, 61 (2d Cir. 2018). "[T]o be an 'employer,' an individual defendant must

possess control over a company's actual 'operations' in a manner that relates to a plaintiff's

employment." *Irizarry*, 722 F.3d at 109. "A person exercises operational control over

employees if his or her role within the company, and the decisions it entails, directly affect the

nature or conditions of the employees' employment." *Id*. at 110.

This inquiry is context-specific and guided by the "economic reality" of the employment

relationship. *Barfield*, 537 F.3d at 141 (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366

U.S. 28, 33 (1961). The Court may consider the following factors in deciding whether the

defendant was an employer under the NYLL: "[W]hether the alleged employer '(1) had the

power to hire and fire the employees, (2) supervised and controlled employee work schedules or

conditions of employment, (3) determined the rate and method of payment, and (4) maintained

employment records.'" *Tapia*, 906 F.3d at 61 (quoting *Barfield*, 537 F.3d at 142).  "No one of the four factors standing alone is dispositive." *Id.*

The plaintiff has established that Ke Lai Xiang and Liu employed him.  The plaintiff testified that Liu hired him in June 2021, that Liu was his direct supervisor during the time that he worked at the restaurant, and that Liu fired him in November 2021.  (Trial Tr. 12:4-18, 14:1-2, 30:11-24.)  While Liu did not personally own Ke Lai Xiang, the evidence established that Liu controlled the plaintiff's work schedules and conditions of employment, including setting his salary.  (*Id.* 14:8-17, 28:17-22.)  In fact, once Liu opened Yu Huo, he changed the plaintiff's work schedule, and directed him to work additional hours at the new restaurant, before and after his shift at Ke Lai Xiang.  (*Id.* 16:7–17:23.)[5]

Under these circumstances, Liu was undoubtedly the plaintiff's employer and is therefore jointly and severally liable under the NYLL.

### b.    Overtime

Under the NYLL, employers must pay employees "for overtime at a wage rate of [one and one-half] times the employee's regular rate for hours worked in excess of 40 hours in one workweek."  Tit. 12 N.Y. Comp. Codes R. & Regs. ("NYCRR") § 146-1.4; *see also Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) ("The FLSA mandates that an employee . . . be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week," and "the NYLL adopts this same standard."); *Valdez*, 2016 WL 3079028, at *3 (observing that the NYLL "mirrors the FLSA in compensation provisions regarding overtime wages").

---

[5] As noted above, the Court does not credit Liu's deposition testimony that he did not hire the plaintiff, set his hours or fire him.

"Although a plaintiff generally 'has the burden of proving that he performed work for which he was not properly compensated,' when an employer has 'inaccurate or inadequate' records, the plaintiff 'has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Feuer v. Cornerstone Hotels Corp.*, No. 14-CV-5388, 2020 WL 401787, at *9 (E.D.N.Y. Jan. 24, 2020) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)); *see also Ying Ying Dai*, 490 F. Supp. 3d at 655 (collecting cases); N.Y.L.L. § 195(4) (requiring employers to maintain payroll records).

The evidence establishes that the defendants violated the NYLL because they did not pay overtime wages to the plaintiff, who worked more than forty hours a week. The parties have stipulated that the defendants did not keep payroll records and that the plaintiff worked more than 40 hours a week. (ECF 50 at 7.) In addition, as the Court found, the plaintiff's contemporaneous log of his hours is the best evidence of his daily and weekly hours. *See Hernandez v. NJK Contractors, Inc.*, No. 09-CV-4812, 2015 WL 1966355, at *34 (E.D.N.Y. May 1, 2015) (finding that the plaintiff's contemporaneously kept calendar was "the best evidence of the days and times that he worked"). That record clearly demonstrates that the plaintiff worked more than 40 hours a week every week he was employed by the defendants. (Pl. Ex. 1.) The plaintiff also testified that he was paid a daily wage — initially $120 a day and then $125 a day — regardless of the number of hours he worked, and that he was not paid overtime. (Trial Tr. 28:17–29:15, 30:5-6.) Accordingly, the plaintiff was not paid one and a half times his regular rate of pay for hours worked over 40 each week, as is required by the NYLL.

To calculate the overtime wages that the plaintiff is owed, the Court begins by determining the regular rate of pay.  Because the plaintiff is a restaurant worker, the New York Department of Labor's regulations for the hospital industry govern this analysis.  *See* 12 NYCRR § 146-3.1 ("The term hospitality industry includes any restaurant.").  Section 146-3.5(b) provides that the regular rate of pay for an employee who, like the plaintiff, is not paid an hourly rate is calculated "by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week."  *See also Nuriddinov v. Masada III, Inc.*, No. 15-CV-5875, 2018 WL 1251335, at *2 (E.D.N.Y. Mar. 12, 2018) ("The court calculated plaintiff's lawful hourly rate on a week-by-week basis for every workweek (Monday-Sunday) he worked for defendants.  By multiplying plaintiff's daily rate ($120) by the number of days worked, the court calculated plaintiff's actual weekly compensation ('Actual Pay Received').  The court calculated plaintiff's lawful hourly rate by dividing plaintiff's Actual Pay Received by the number of hours worked in that week.").

Moreover, under the NYLL, "[w]orking time means . . . time an employee is required to be available for work at a place . . . prescribed by the employer such that the employee is unable to use the time productively for his or her own purpose."  12 NYCRR § 146-3.6.  Thus, "all of the time worked during a continuous workday is compensable, save for *bona fide* meal breaks." *Hernandez v. Jrpac Inc.*, No. 14-CV-4176, 2016 WL 3248493, at *27 (S.D.N.Y. June 9, 2016) (internal quotations omitted).  "To qualify as a *bona fide* meal period, '[t]he employee must be completely relieved from duty for the purposes of eating regular meals" and must usually be "30 minutes or more.'"  *Marcelino v. 374 Food, Inc.*, No. 16-CV-6287, 2018 WL 1517205, at *17 (S.D.N.Y. Mar. 27, 2018) (quoting *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 472 (S.D.N.Y. 2015)).  But "[s]hort rest periods running from 5 minutes to about 20 minutes must be

counted toward an employee's working hours," even if that time is set aside for a meal. *Castillo v. Perfume Worldwide Inc.*, No. 17-CV-2972, 2018 WL 1581975, at *7 (E.D.N.Y. Mar. 30, 2018) (internal quotations omitted).

The plaintiff's meticulous record of his work hours, corroborated by his testimony, clearly establishes that his once-a-day meal breaks were typically 10 to 20 minutes, and almost never more than 25 minutes. (Pl. Ex. 1; Trial Tr. 15:20-24, 48:4-5.) Further, the record of his hours shows that his breaks were irregular — often beginning and ending at seemingly random times. (Pl. Ex. 1.) The Court concludes from these facts that the plaintiff was not free to use this time as he wished, and therefore, these breaks were compensable hours.

Accordingly, the Court calculates that the defendants owe the plaintiff $24,370.27 in overtime pay. The Court determines that amount as follows:

| Week Ending | Hours Worked | Wages Received | Regular Rate[6] | Overtime Rate[7] | Overtime Hours | Overtime Owed |
|---|---|---|---|---|---|---|
| June 20 | 68.38 | $720 | $18 | $27 | 28.38 | $766.26 |
| June 27 | 79.76 | $840 | $21 | $31.50 | 39.76 | $1,252.44 |
| July 4 | 69 | $720 | $18 | $27 | 29 | $783.00 |
| July 11 | 80.36 | $840 | $21 | $31.50 | 40.36 | $1,271.34 |
| July 18 | 69.15 | $720 | $18 | $27 | 29.15 | $787.05 |
| July 25 | 80.37 | $840 | $21 | $31.50 | 40.37 | $1,271.66 |
| August 1 | 80.24 | $840 | $21 | $31.50 | 40.24 | $1,267.56 |
| August 8 | 80.35 | $840 | $21 | $31.50 | 40.35 | $1,271.03 |
| August 15 | 68.96 | $720 | $18 | $27 | 28.96 | $781.92 |
| August 22 | 68.79 | $720 | $18 | $27 | 28.79 | $777.33 |
| August 29 | 68.18 | $720 | $18 | $27 | 28.18 | $760.86 |
| Sept. 5 | 80.27 | $840 | $21 | $31.50 | 40.27 | $1,268.51 |
| Sept. 12 | 68.27 | $720 | $18 | $27 | 28.27 | $763.29 |
| Sept. 19 | 68.18 | $720 | $18 | $27 | 28.18 | $760.86 |

---

[6] Calculated as wages divided by 40. 12 NYCRR § 146-3.5(b).

[7] "The overtime rate is computed by using a multiplier of one and half times the regular rate of pay." *Chen v. L & H Wine & Liquor, Inc.*, No. 19-CV-6115, 2024 WL 1932855, at *8 (S.D.N.Y. May 2, 2024) (citing 12 NYCRR § 146-1.4).

| Sept. 26 | 79.78 | $840 | $21 | $31.50 | 39.78 | $1,253.07 |
| Oct. 3 | 68.59 | $720 | $18 | $27 | 28.59 | $771.93 |
| Oct. 10 | 80.07 | $840 | $21 | $31.50 | 40.07 | $1,262.21 |
| Oct. 17 | 68.47 | $720 | $18 | $27 | 28.47 | $768.69 |
| Oct. 24 | 72.6 | $720 | $18 | $27 | 32.6 | $880.20 |
| Oct. 31 | 93.08 | $865[8] | $22 | $32.40 | 53.08 | $1,721.78 |
| Nov. 7 | 98.98 | $875 | $22 | $32.80 | 58.98 | $1,935.28 |
| Nov. 14 | 100.77 | $875 | $22 | $32.80 | 60.77 | $1,994.02 |
| **TOTAL** | | | | | | **$24,370.27** |

c.    **Spread-of-Hours Pay**

The plaintiff also alleges that defendants violated New York's "spread-of-hours" requirement.  Under New York law, in addition to minimum and overtime wages, "an employee shall receive one additional hour of pay at the basic minimum hourly rate" for days on which "the spread of hours exceeds 10 hours."  12 NYCRR § 146-1.6(a).  "The measure of the workday . . . is the number of hours from the time the employee starts his work until he finishes, including both work time and non-working time."  *Chen*, 2024 WL 1932855, at *7.  "This provision applies 'regardless of [the] employee's regular rate of pay.'"  *Liu v. Little Saigon Cuisine Inc.*, No. 18-CV-2181, 2021 WL 4487839, at *12 (E.D.N.Y. Sept. 30, 2021) (quoting 12 NYCRR § 146-1.6(d)).

The plaintiff's logbook establishes that he was entitled to spread-of-hours pay for every day he worked.  But he never received this additional pay.  At the relevant time, the minimum wage was $15 an hour.  12 NYCRR § 146-1.2(a)(1)(i)(*b*).  Accordingly, the plaintiff is owed $2,160 in spread-of-hours pay.

| Month | Days When Spread-of-hours > 10 | Minimum Wage Rate | Spread-of-Hours Pay Owed |
|---|---|---|---|
| June 2021 | 15 | $15 | $225 |
| July 2021 | 30 | $15 | $450 |

---

[8] The plaintiff testified that he began started working at the second restaurant on October 27, 2021 — and it was at that time that his daily wage was increased to $125.  (Trial Tr. 22:23–23:1, 29:14-15.)

| August 2021 | 28 | $15 | $420 |
| September 2021 | 28 | $15 | $420 |
| October 2021 | 29 | $15 | $435 |
| November 2021 | 14 | $15 | $210 |
| **TOTAL** | | | **$2,160** |

### d.    Time of Hire Notice and Wage Statements[9]

Under Section 195(1)(a), employers must give their employees, at the time of hiring, a written notice that includes their rate of pay and additional information. *Ying Ying Dai*, 490 F. Supp. 3d at 659 (citing N.Y. Lab. Law § 195(1)(a)).  If an employee is not given this notice "within ten business days of . . . [his] first day of employment," he may recover "damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees."  NYLL § 198(1)(b).

The "NYLL also requires employers to provide employees wage statements with every payment of wages."  *Sevilla*, 2022 WL 954740, at *7 (citing NYLL § 195(3)).  An employee who does not receive wage statements with each payment of wages may recover $250.00 for "each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars."  NYLL § 198(1-d).

---

[9] Courts in this district have disagreed about whether a plaintiff has standing to recover under these provisions of the NYLL after the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).  *Compare Sevilla v. House of Salads One LLC*, No. 20-CV-6072, 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022) ("While Defendants did not provide proper wage notice and statements to Plaintiffs, Plaintiffs lack standing to maintain these claims.") *with Veloz v. MM Custom House Inc.*, No. 19-CV-852, 2024 WL 1282698, at *6 (E.D.N.Y. Mar. 26, 2024)  ("Plaintiffs have Article III standing to bring claims under NYLL §§ 195(1) and (3) based upon the facts alleged because wage notices and wage statements are necessary to empower employees to understand and advocate for their rights, and the deprivation of that information can impinge on an employee's interest not only in being paid what is owed, but also in being able to advocate for the receipt of proper pay." (internal quotations omitted)).  The weight of the precedent suggests that most courts in this district have held that plaintiffs still have standing to recover under these statutes.  These courts' analyses are persuasive.  *See, e.g.*, *Beadle v. Forever Jerk LLC*, No. 23-CV-9166, 2024 WL 3813374, at *6 (E.D.N.Y. July 31, 2024), *report and recommendation adopted*, 2024 WL 4528940 (E.D.N.Y. Oct. 18, 2024).

The parties stipulate that the plaintiff did not receive a written notice complying with section 195-1(a) and did not receive wage statements, as required by section 195(3).  (ECF No. 50 at 6–7.)  Under Section 198(1-b), employers have an affirmative defense if they pay their employers properly.  However, as detailed above, the plaintiff is owed substantial wages, and the defendants are not entitled to this defense.

Accordingly, and because the plaintiff worked nearly every day for six months — well over 100 days — he is entitled to the statutory maximum of $5,000 under each provision.  *See Wing Chan v. Xifu Food, Inc.*, No. 18-CV-5445, 2020 WL 5027861, at *9 (E.D.N.Y. Aug. 5, 2020) ("Both plaintiffs testified that they never received wage statements with their pay. . . . Because plaintiffs' employment after February 26, 2015 spans more than twenty days, they are each entitled to damages in the full statutory amount of $5,000 for the wage statement violations."), *report and recommendation adopted*, 2020 WL 5027147 (E.D.N.Y. Aug. 25, 2020).

## IV.    Damages

The plaintiff is owed $24,370.27 in overtime wages and $2,160.00 in spread-of-hour payments.  The plaintiff is also entitled to $10,000.00 in statutory damages for violations of Section 195(1) and (3) of the New York Labor Law, respectively.

### a.    Liquidated Damages

In addition, the plaintiff seeks liquidated damages for his unpaid wages under the NYLL.  Under Section 198(1)(a), the Court may assess liquidated damages, calculated as no more than "one hundred percent" of the unpaid wages unless the violation is "willful," for unpaid wages "unless the employer provides a good faith basis for believing that its underpayment of wages was in compliance with the law."  N.Y.L.L. § 198(1)(a); *see also Feuer*, 2020 WL 401787, at *11 ("Liquidated damages in the amount of actual damages are . . . available under NYLL.").

"The Second Circuit has described the employer's burden of proving good faith as 'a difficult one to meet' and has held that 'double damages are the norm, single damages the exception.' The Second Circuit has also rejected the view that the absence of subjective malice or bad faith, on its own, is sufficient to invoke the exception." *Haifeng Xie v. Sakura Kai I Inc.*, No. 17-CV-7509, 2019 WL 1568756, at *8 (E.D.N.Y. Apr. 11, 2019) (quoting *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)).

There is no evidence that the defendants had a good faith basis to believe that underpaying the plaintiff complied with the law. Accordingly, I award liquidated damages in the amount equal to the plaintiffs' unpaid wages.[10]

### b.    Pre-Judgment Interest

The plaintiffs also seek pre-judgment interest. Under Section 198(1)(a), plaintiffs who prevail on NYLL wage claims are entitled to prejudgment interest on their "underpayment[s]." "The applicable interest rate is 9% per annum, calculated 'from the date [each item] was incurred or upon all of the damages from a single reasonable intermediate date.'" *Feuer*, 2020 WL 401787, at *12 (quoting N.Y. C.P.L.R. §§ 5001(b), 5004). "[P]rejudgment interest is not available for violations of the wage statement or wage notice provisions." *Id.* (quoting *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017), *aff'd*, 752 F. App'x 33 (2d Cir. 2018)) (internal quotation marks omitted). Nor is it available "for any award of liquidated damages." *Estrada v. Giovanni's Italian Eatery, Inc.*, No. 16-CV-6152, 2020 WL 4917179, at *5 (S.D.N.Y. Aug. 20, 2020).

---

[10] "Liquidated damages are not available for violations of the NYLL wage notice and statement provisions." *Jian Hua Li*, 2020 WL 1694356, at *14.

The plaintiff incurred damages from June 15, 2021 until November 15, 2021.  Where a plaintiff incurs damages over a period of time, the pre-judgment interest may be calculated from a single reasonable intermediate date.  N.Y. C.P.L.R. §§ 5004, 5001(b).  "The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating pre-judgment interest" for damages awarded under the NYLL.  *Beadle*, 2024 WL 3813374, at *8.  Accordingly, the plaintiffs are entitled to pre-judgment interest on their unpaid wage damages of $26,530.27 from August 30, 2021 — the midpoint of the period in which the plaintiff incurred damages — until the date judgment is entered, at $6.54 a day (($26,530.27 x .09) / 365 days).

### c.      Attorney's Fees and Costs

Finally, the plaintiff requests attorney's fees and costs.  The NYLL allows for a successful plaintiff to recover "reasonable" attorney's fees.  NYLL § 663(1).  Because the plaintiff has established the defendants' liability for violations of the NYLL by a preponderance of the evidence, he is entitled to a reasonable award of fees and costs.  While the plaintiff's counsel submitted his hours and costs, he has not provided an affidavit or declaration stating his experience and qualifications or the basis for his proposed hourly rate.  *See Bozdogan v. 23 Ludlam Fuel, Inc.*, No. 16-CV-1053, 2022 WL 4273851, at *10 (E.D.N.Y. Sept. 15, 2022).  The plaintiff is directed to file a renewed application for fees within 45 days of entry of this order.

### CONCLUSION

For the reasons stated above, the Court concludes that the plaintiff did not demonstrate by a preponderance of the evidence that the defendants violated the FLSA.  However, the plaintiff established overtime, spread of hours and notice and wage statement violations under the NYLL by a preponderance of the evidence.  The Court enters judgment against the defendants in the amount of $63,060.54, consisting of: (1) $26,530.27 in unpaid wages; (2) $26,530.27 in

liquidated damages; and (3) $10,000.00 in statutory damages for violations of the wage statement provision of the NYLL.  Pre-judgment interest should be added to this amount, to be calculated as stated above.  In accordance with Section 198(4) of the NYLL, if any amounts remain unpaid ninety days after the issuance of this judgment, or ninety days after expiration of the time to appeal if no appeal is then pending, whichever is later, the total amount of judgment will automatically increase by fifteen percent.

The plaintiff must file any renewed motions for default judgment or attorney's fees within 45 days of entry of this order.

The Clerk of Court is respectfully directed to enter judgment accordingly.

**SO ORDERED.**

s/Ann M. Donnelly

_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
       March 30, 2025